Mr. Mote is the surviving spouse of Wayne Mote, a Vietnam veteran who served his country in the Air Force. It has been nearly 10 years since Mr. Mote first sought disability benefits from the VA, and Mrs. Mote is carrying on his struggle. Two years ago in the Martin case brought by Mrs. Mote and others, this court established a new standard for determining whether delays like those Mrs. Mote has endured violate the law. As Judge Moore noted in her concurring opinion, under the new Martin standard, veterans should have a much easier time obtaining mandamus. But on remand, the CABC not only denied Mrs. Mote's petition, it failed to apply the Martin framework at all. Mrs. Mote deserves more than the same we're-working-on-it excuse that the VA has used for years before Martin. This court should make clear that it meant what it said in Martin and reverse the judgment of the CABC. Your Honor- Mr. McLeod, can I just ask- Mr. McLeod, can I just interrupt you to ask you, because what's a little confusing, or maybe unusual, maybe not unusual to me, is the fact that we've only almost got kind of parallel proceedings, and that's certainly understandable, that you or your co-counsel are representing Mrs. Mote, and there are proceedings sort of ongoing now before the RO. So I guess I'd just like you to comment on that. I mean, that makes it a little difficult. You're asking us, or you're asking under the mandamus petition, to have the board issue an opinion within a period of time. Does that preclude a remand, or is that any way affected by the fact that counsel before the RO seemed to suggest that there was a failure of duty to assist, and therefore a further inquiry was necessary? A couple of responses on that point, Your Honor. First, just on the last point you mentioned about the request for further development, I think if you read the January 14, 2020 letter that I believe Your Honor is referring to, the bulk of the letter is devoted to explaining why Mrs. Mote is entitled to release on the current record. So I don't necessarily agree that there was an explicit request for further development. To more directly address your question about whether the parallel proceedings and the activities going on at the RO level are relevant, I agree that those are factors that could be considered in the Martin analysis. But the fundamental point of Martin, and the reason this court in Martin rejected the Costanza standard that the CAVC had been using, was that at some point enough is enough. And even if the secretary is working on a case or taking steps to move a case forward, there comes a point in time when the delay that a veteran or their spouse or family member has experienced is so significant that mandamus is warranted. And I would submit that Mrs. Mote has reached that point. We're talking about nearly seven years since the beginning of this appeal. And although I will grant that the secretary has taken some steps to resolve the case, we believe she's at the point where she is entitled to release on her mandamus petition. And that is either granting... Let me ask you about that relief. I'm sorry to interrupt, but maybe you were going there. But does that relief necessarily preclude a remand at all, exclusively a decision within a specific period of time by the board? Or is it broader? No, Your Honor, I don't think that the release we've requested excludes the possibility of a remand. So, for example, the CAVC could have given the VA a certain amount of time in which to conduct the remand and then directed that a reasoned decision issue after some amount of time following the conclusion of the remand proceedings. The CAVC also could have granted Mrs. Mote's separate request for some kind of judicial oversight. The request in the petition was for a status report from the VA every 30 days until a reasoned decision issued. And we know from the course of this litigation that that sort of judicial oversight can be critical in prompting action from the VA. The only reason in this case that Mrs. Mote, after three years of waiting, was scheduled for a travel board hearing is because the CAVC asked the Secretary Kerry to provide an update on Mrs. Mote's case, the status of the case. On the same day that that status update was provided, the VA scheduled the hearing. So that relief is really critical to getting Mrs. Mote to the conclusion of her case after so many years. Let me bring you back to where I think you were going to start, which was whether or not the CAVC conducted an appropriate inquiry with respect to the track factors. And I can ask the government about this because I'm a little unclear on their position, which is, they didn't have to because the CAVC found this moot because of the hearing and premature because of the other stuff, or whether they did provide a substantial analysis of the track factors. So what is your understanding of what their position is? My understanding of the government's position is both of the points that you alluded to, Your Honor. The government first argues that the case is moot because of, at the time, the scheduling of the hearing. They have now changed their position to the holding of the hearing moots Mrs. Mote's claim, but they are also arguing that the analysis that the CAVC performed was sufficient on its own, even in light of Martin. And I would respectfully submit that the government is wrong about both of those points. And I'll start with the mootness argument. Mrs. Mote's case is not moot because she has not received the relief she requested. As I had mentioned earlier, Mrs. Mote requested a reasoned decision from the VA. That is a decision granting or denying her benefits claim. She also requested judicial oversight in the form of a court order compelling the secretary to provide updates on the status of the case every 30 days until the reasoned decision issued. Mrs. Mote did not receive any of those things. All that she got was an order from the BVA remanding for additional proceedings to collect additional evidence. Now, we would submit that those remand proceedings really were not necessary because the evidence in the record is more than sufficient to grant service connection. But setting that aside, the fact that Mrs. Mote got that remand order does not change the fact that she did not receive a reasoned decision. And in fact, the secretary concedes in footnote five of his brief that a remand order like the one Mrs. Mote got is not even a sufficient moment to qualify as a decision that would be reviewable by the CAVC or this court. So the suggestion that after seven years of waiting, Mrs. Mote has somehow gotten everything she needs, I would submit is just simply incorrect. On the question about the Martin analysis, I think it's clear that if you look at what the CAVC did, it certainly alluded to the existence of the track factors, but there's no real analysis of any of those factors. The emphasis of the CAVC was on the fact that the hearing had been scheduled. And there's the sort of odd, I would submit, suggestion that the mere scheduling of the hearing somehow both moots the case and makes it unripe and premature. And again, I don't think that that's correct. That standard resembles nothing more than the Costanza standard that this court in Martin made clear was inappropriate to apply. How did you, you mentioned that, excuse me, I'm sorry. You mentioned the sentence that is puzzling to me in the CAVC opinion, where they say the hearing, the mootness for the hearing I get, but then they say with respect to her writ itself, they say her writ is concerning her claims is premature. What do you understand that to mean? You have to wait until, I mean, do you understand it, the CAVC meant that she has to wait till she has the hearing and for the entire proceeding to be concluded for it to make the writ ripe? Your Honor, I do have difficulty understanding that sentence, but I think what you're suggesting is probably the best interpretation of it, that the CAVC is saying, Mrs. Moat has to file relating to the hearing, and then at that point she could file a separate writ and start the appeal proceedings for her writ all over again. And I don't think that that's correct. If you look at the delay that Mrs. Moat has experienced, even at the point where we were before the CAVC, that delay is significantly longer than delays other courts have found to be unreasonable in similar circumstances. And so I think the court can look at the entire delay that Mrs. Moat has experienced and applying the Martin analysis conclude that the delay has been unreasonable and she is entitled to mandamus. And Your Honor, I'm happy to go through each of the Martin factors one by one if the court is interested. I do think that the majority of the dispute between the parties on Martin is over the application of the first Martin factor, which asks whether the time that it takes to make a decision is governed by a rule of reason. And there again, the focus of the CAVC's decision was on the fact that there had been a request for a hearing and that that had added time to the proceedings. And I would submit that that is an inaccurate way to apply the first Martin factor for a number of reasons. First of all, it ignores the fact that there's been no explanation for why it was reasonable in the first place to take three years to grant Mrs. Moat's request for a hearing. I understand that the secretary has suggested there are resource limitations that prevent holding hearings before the travel board as expeditiously as the secretary might want. But even granting that again, there's no explanation in the record for why it took three years. But even if you assume that that three year period was reasonable, we're still left with Mrs. Moat's request for a hearing. For example, it took the secretary... Counsel, can you hear me? This is Judge Stoll. I just, I wanted to know if you could answer just questions related to what you just said, which is, do you have a sense for what the typical amount of time is that a veteran who chooses a travel hearing would have to wait? Are there statistics like that available that you're aware of? Your Honor, the statistics that I'm aware of are not specific to the travel board. They relate to the amount of time it takes for a hearing to occur in general. And I think that those statistics, which are in the annual reports that the BVA publishes, suggest that it does take a significant amount of time. On average, I think it's more than a year. Mistakers may be better positioned to answer exactly what the current statistics look like. There is also the fact that once the hearing occurs, many of those hearings result in remands, as was the case in Mrs. Moat's case. And those remands themselves add significant time. The secretary's own statistics suggest that a remand after hearing adds on average 467 days to the appeal process. And that's not even including the amount of time that it might take the BVA to issue a second decision. If you include that, it can be up to 688 days, I believe, for the total remand factor time. So all along the process, we're looking at significant delays. And as I said before, some of the delays that Mrs. Moat has experienced have nothing to do with the hearing request. The issuance of the statement of the case, in this case, took three years and three months, which is more than double the amount of time that it normally takes the secretary to complete that step of the process. So from the very outset, Mrs. Moat's appeal has been delayed. I heard that buzzer go off. The court doesn't have any further questions. I'll reserve the balance of my time. Hearing none. Thank you. Let's hear from Ms. Akers. Thank you, Your Honor. Good morning. May it please the court. I'll begin by addressing the issue of mootness. In the time since the Veterans Court issued its decision denying Mrs. Moat's petition for mandamus and this appeal, Mrs. Moat has received the relief that she sought in her petition, which was a board decision. And that fact is the end of the live controversy in this case, and therefore, the case is moot. Now, Mrs. Moat argues that the board decision that she received, which was a remand, isn't the type of board decision she wanted. She either wanted a grant of benefits or the denial of benefits. But Mrs. Moat really is just attempting to compel a specific decision or result through a remand. Well, can I interrupt you for a minute, Ms. Akers, just taking you through, which I think is part of your presentation, to the switch in the CAVC opinion, which I was discussing with your friend, Mr. McCloud, where the board says her request for a writ to issue a decision concerning her claims is premature. Is the CAVC saying, now that this second level proceeding is going on, they won't have the copyright until conceivably two or three or four years from now, we ultimately get a decision coming out of this case? What does premature mean? I mean, you have to wait. Her writ deals with her past delays and the need to put some timetable on going forward. And what I understand the government to be saying is, we know the current status. So if it takes another year to get the information, and if it takes the board four years to get its decision, only then will a writ of mandamus be ripe. Is that what the CAVC is saying? I don't believe so, Your Honor. I think that the CAVC's note that her claim is premature references the remedy that she seeks. And so the CAVC was faced with her petition for a mandamus, which was seeking an immediate board decision. And in conflict with her request for that extraordinary remedy was her simultaneous request for a travel board hearing that was pending. So taking into account Mrs. Moate's stated interest that on one hand, she said there was more evidence to be elicited before she wanted a decision. That's why she wanted a travel board hearing. On the other hand, she wanted an immediate decision. And so I believe that the CAVC was saying that her request for an immediate decision is premature because there's a predecessor step in the process that Mrs. Moate... Well, the CAVC, however, if the CAVC concluded that she had met the track factors as to what had gone down beforehand, then weren't they free? Did they not have the authority to say, well, wait a minute, given the current status, we're going to have a 30-day monitoring, 30 days apiece, and we're going to put a time frame, 60 days for the remand, 60 days for the board after the remand is concluded. I mean, they weren't necessarily completely and only bound by this request, whatever it was, for 30 days or 45 days after the filing, right? The CAVC could have fashioned in what your view might have been a more reasonable timetable given the request for a travel hearing, et cetera, right? I agree with that, Your Honor, with the caveat that although the CAVC could have fashioned a remedy that was not requested by the parties, it's certainly not an abuse of discretion for the CAVC not to do something that was never requested by Mrs. Moat. Now, she's asking for an immediate decision, and by denying her petition for mandamus, the CAVC is really adhering to her own interest in further developing her claim. She also asked for a report every 30 days in terms of the status of this proceeding. Why would that? I mean, that's what they requested. So why would that be a problem for the CAVC to reach that, and why is that premature given the history of this case? Perhaps, Your Honor, the request for a progress report wasn't premature, but we believe that that is sort of ancillary relief that she was seeking in attempt to get the real relief that she wanted, which was a board decision. And so that... And just to be clear, with your answer to my earlier question, I'm sorry to interrupt, but the time is constrained, the CAVC would clearly have authority, would they not, to not accept the precise relief that she was requesting in terms of when the board decision would issue, but to extend it or to modify it based on the circumstances on the ground. That clearly would have been within their authority, correct? I believe, Your Honor, that the court has authority to fashion an appropriate remedy. However, I am not 100% sure on the case law as it relates to the Veterans Court for that. And I would just again remind Your Honor that even if a court can do something under an abusive discretion standard, the fact that the court doesn't do it, we would suggest is not an abusive discretion. Counsel? Yes? Counsel, this is Judge Moore. I guess one of my concerns is that I don't see any analysis of the track factors having taken place. And it's almost as though we didn't write Martin. So, I feel like that, I'll be honest with you, I feel like that is itself an abusive discretion not to have performed precisely and exactly the analysis that we said needed to be performed when we remanded this case last time. Understood, Your Honor. The court remanded for the Veterans Court to consider the traditional mandamus requirements, which are the Cheney factors, as informed by the track analysis. But the important point here is that the court recognized in Martin that all three Cheney requirements must be met for a mandamus to be issued. And so, because the Veterans Court determined that Cheney factor three, whether under the circumstances the writ was appropriate, was not met, there was really no need for the all three factors must be met. So, I understand your concern that little ink was spilled talking about the track factors, but the Cheney factors still govern. The Veterans Court still has to adhere to that test put forth by the Supreme Court. So, you acknowledged just in response to Judge Moore, you're agreeing with Judge Moore that the CAVC did not consider the track factors. Rather, they concluded that the case was either new or premature and that they didn't have to consider those factors, correct? I wouldn't go that far, Your Honor. The court, the CAVC, did cite the track factors, and you can certainly gather from the analysis. I'm sorry, go ahead, I'm sorry. No problem. You can certainly gather from the court's analysis that they were grappling with what the track factors are aimed to look at. For example, the track factors take note of the veteran's interest, and that's certainly what the CAVC was looking at when it was analyzing this request for mandamus. So, I agree that the court didn't go factor by factor and put a three-paragraph analysis under each one, but the analysis that the CAVC provided did account for Mrs. Moe's interest in receiving a traveling board hearing, which is track factors three and five, for example, and it really focused on Mrs. Moe's interest rather than the VA's interest, which is the big distinction between the track analysis and the Costanza analysis. So, we would assert that because the CAVC adhered to the Cheney requirement, specifically number three, as it's required to do, and took into account Mrs. Moe's interest in its analysis, which is appropriate under the track factors, the CAVC didn't abuse its discretion by denying Mrs. Moe's petition for mandamus. Counsel, can you further elaborate just so I understand clearly your argument? My question, I think that it was an abuse of discretion not to analyze this case under the track factors, and you're saying they didn't have to get to the track factors because the track factors are one of the three Cheney factors, and if the other two Cheney factors aren't met, then they never had to review the track factors. That's what I understand your argument to be. What is the Cheney factor that you think dispositively resolves this case that the lower court actually decided? I think the Cheney factor that was the subject of the CAVC's analysis was the third Cheney factor, whether under the circumstances mandamus is appropriate. To your point, Judge Moore, about the court perhaps abusing its discretion by simply not applying the track factors, I would just note that in the track case itself that put forth these factors for the first time, the court didn't go through one by one and analyze the track factors. It said the circumstances are such that we don't need to do the test here, even though if it were, that would inform our analysis. And so I don't think that it's automatically an abuse of discretion not to go factor by factor if the overall circumstances are not so egregious as to warrant mandamus, which is what the… Counsel, you just referred… Were you saying the Martin case didn't analyze the track factors? No, Your Honor. I was referring to the track case from the D.C. Circuit. Oh, the track case. Okay. All right. I got you. Correct. And just the point there is that it's not an abuse of discretion for the court not to go line by line through all of the factors if the Cheney test is not met, which also applies. Of course, the track factors are in… Or, excuse me, the Cheney test is informed by the track factors, but if all three Cheney requirements must be met and the court here found that mandamus wasn't appropriate under the circumstances, there was no abuse of discretion. We would assert, though, that the court doesn't even need to get to the merits of this case because of the mootness. And the important point on the mootness here and what's notably missing from this case is what remedy Mrs. Moat now seeks. Given, as we explained in our July 31st response to this court's request regarding the update of the case, there has been a lot of action that has happened since this petition for mandamus was filed. Mrs. Moat, you received a call again? Yes. I'm sorry. Before you get into that, would you mind answering a question I had asked your friend on the Mrs. Moat's choice to have a travel board hearing? What is the typical or average time until a travel board hearing when a veteran chooses a travel board hearing? Your Honor, I don't have the answer off the top of my head, but I do have some information that might be helpful for you. The travel board is, of course, the judges going around the country, so they have to get on a flight and all of that. There are about 90 judges, and they conduct about 5,000 of these travel board hearings every year. So, if there are more requests, can you get an answer to my question? I mean, if you can get an average delay or typical delay, and I'm just wondering, is there a resource somewhere that you could point me to? I could find that information and submit a letter to the court. I just don't have it in front of me, so I'm not sure where to point you. But the travel board hearing, if there are more requests than capacity, is just a first come, first served basis. And so, it's not as though Mrs. Moat is waiting far longer than any other veteran or veteran family member. If there are more requests than capacity, she has to wait in line like everyone else. And so, if you could- Counsel, I think that goes to sort of the heart of what we expressed concern about in Martin, which was just the exorbitant amount of time to perform even ministerial tasks. And I'm not suggesting a hearing itself is ministerial, but in Martin, there were so many examples of things that took years and years that could have been done in a matter of minutes. And I understand that you're saying, oh, well, but it takes years and years for everyone. I just don't see how that's an excuse. I don't see how that's a response to a request, which is the agency isn't doing its job and it isn't giving me a decision in a reasonable amount of time. I understand your concern, Judge Moore. I would note, though, that although the travel board hearing does take a significant amount of time to get scheduled, there are other resources for the veteran or their family member. For example, there's an option for video conference rather than having the judge get on a plane and fly to the claimant. That was offered to Mrs. Moe on four separate occasions, but she wanted the in-person hearing, which is, of course, her right. But it's not as though there was no way to speed this up. And the VA has taken steps to increase its video conferencing capabilities in the past. And so the delay here, I'll just finish my sentence and then be done. The delay here was not some sort of ministerial or clerical act that the VA was just refusing to move on. There are real resource and personnel limitations that the VA has sought to remedy through video conferencing, but Mrs. Moe didn't want to take advantage of that, which, of course, is her right. But then there are consequences resulting in this delay. Thank you, Your Honors. Thank you. Mr. McLeod? Thank you, Your Honor. Just a couple of points in response. First, our fundamental argument is not that the CAVC erred in failing to analyze Martin line by line. It's that the CAVC never bothered to analyze Martin in the first place. As Judge Moore noted, it seems almost like the CAVC ignored the existence of Martin. And sadly, that is a very common outcome in these sorts of cases. I am aware of nearly 200 cases that have been decided by the CAVC post-Martin involving mandamus petitions. And in all but one of them, the petition has been denied, often with none of the analysis that's called for by this court's decision in Martin. So, Mrs. Mode is not alone in experiencing the sort of minimal analysis that is present in this case. To return to the discussion... Okay, counsel, counsel, counsel. This is Judge Moore. So, I guess here's my concern. What is the relief you are hoping this appellate court will give you in this case? Suppose I agree with you that it was an abuse of discretion for the CAVC to fail to properly analyze mandamus, taking all of those things into consideration. Isn't that just a vacated remand for them to do the analysis under those circumstances? Your Honor, I think that is one option available to the court. The other option that is available to the court on the mandamus issue is, I believe, to actually explain how the Martin analysis would apply in those circumstances, to create the sort of precedent that would guide the CAVC in its analysis of future mandamus petitions presenting claims of unreasonable blame. Counsel, you can't possibly think that this court should actually perform the track analysis factors. There's so much involved in terms of factual analysis or understanding of the circumstances that it just seems very inconsistent with what we appellate courts do in the first instance. Your Honor, I understand your point. I do think the record is sufficient to allow the court to perform that analysis. But if the court disagrees, then Your Honor is correct that vacating and remanding with clear instructions to actually perform the analysis required by Martin would be another option. Well, one of the other things I don't understand about this case is why the lower court decided to deny mandamus to the extent that it was requesting simple oversight and reporting, even if they weren't going to grant mandamus in the form of, you know, hey, board, issue an immediate decision, which seems like a very unlikely remedy. But the oversight, given that this case has taken over nine years, look, we all know when someone is looking over your shoulder, you're going to eat fewer cookies. So, you know, you're going to be better behaved. You're going to act faster because someone's looking over your shoulder and watching you. So I guess I'm just kind of wondering what was the harm in granting that portion of the mandamus petition? Your Honor, I see my time has expired. If I may respond to this question. Please proceed. Yes. Your Honor, you're exactly right. There was no barrier to the CABC issuing the sort of oversight relief that Mrs. Moak called for in her petition. And I think the remedy of mandamus is an equitable remedy. It's inherently flexible. The CABC could have taken consideration of what the appropriate relief would be in these circumstances, and it failed to do that. So for those reasons, we'd have to... So you're at disagreement. Just let me follow up on that. I'm sorry. Let me follow up because the government, I don't know if she was absolutely definitive, but was suggesting that if the CABC didn't think this final decision by the board in 30 days that you were requesting was feasible, then they couldn't fashion another remedy. I'm hearing you say that, of course, they could based on the circumstances at the ground. Exactly, Your Honor. Of course, the court has wide discretion to fashion a remedy. That happens in many mandamus cases where the court thinks that the full relief that grants, but nevertheless grants a lower level of relief. And that would have been perfectly appropriate to do in this case. Counsel, can I ask one more factual question just to make sure I understand? Didn't you, in fact, ask for that? Didn't you give the CABC alternatives, which was, please order them to issue a board decision, either thumbs up or thumbs down within 30 days, or in the alternative, please exercise oversight in the form of, you know, status updates every 30 days to make sure things are proceeding? Wasn't that part of your argument to the CABC? That's absolutely correct, Your Honor. That was explicitly our petition. It was briefed to the CABC, and the court never even considered that option. So it's not a matter of even asking them to fashion an alternative. You actually gave them two discrete alternatives.  That's correct, Your Honor. Did you, I just want to ask one other quick question, and I'm sorry if you could be briefed, but did you have any response to the government's analysis of, well, didn't really have to do the track factors because of Cheney, and they reached that first, and therefore the track factors kind of are not necessary to go into an in-depth analysis? Do you have a response? I do, Your Honor. Yes, I don't agree with that analysis. The point of track is to channel the court's analysis under Cheney. So Cheney sets out the general standard for mandamus, but the track analysis is the way that you apply Cheney in the particular context of unreasonable delay. I think the consequence of the government's position is that you could perform the track analysis and find that a delay was so egregious that it warrants mandamus, but nevertheless have the court deny it based purely on its discretion. I would submit that that just simply can't be the standard. Otherwise, there would be no purpose to performing the track Martin analysis at all. A court could always simply say, I, for whatever reason in my discretion, decide mandamus is not appropriate. So the reason that the track analysis exists is to channel the discretion and decide when it is appropriate to award mandamus relief, and those circumstances are met here. Anything else from the panel? No, Your Honor. Thank you. We thank both sides and the cases submitted. That concludes our proceeding for this morning. Thank you all. The honorable court is adjourned until tomorrow morning at 10 a.m.